## Commonwealth *v.* Tierney, Appellant.

*Liquor laws—Sales without license—Sham club—Scheme to evade the license laws—Facts.*

Defendant was indicted, under the act of May 13, 1887, for selling liquor without a license. His defence was that he was not selling on his own account, but as steward of an incorporated club, and that no sales were made to others than members of the said club, unless brought there by a member. The evidence of the prosecution was to the effect that defendant had been selling liquor under a wholesale license and that his place was of bad character. He failed to procure a license for the year 1891. Soon after, the alleged club came into existence in the defendant's old barroom. The evidence showed that it was a mere sham or device to evade the license laws. Though a club in form, it was in fact a mere barroom where liquor was sold without a license. There was a clumsy attempt to disguise its real character and throw over it the protecting mantle of the law :

*Held*, that under these circumstances it was not error to instruct the jury that, if they believed the testimony, it was their duty to find the defendant guilty of that with which he was charged.

The rights of a bona fide club, not being involved in this case, not considered.

Argued April 4, 1892.    Appeal, No. 203, Jan. T., 1892, by defendant, Patrick Tierney, from judgment of Q. S. Phila. Co., Sept. Sess., 1891, No. 1239, on verdict of guilty.    Before PAXSON, C. J., STERRETT, GREEN, WILLIAMS, McCOLLUM, MITCHELL and HEYDRICK, JJ.

Indictment for selling liquor without a license.

The facts appear by the charge of the court below, PENNYPACKER, J., which was as follows :

" The act of 1887 makes it a penal offence to sell liquor, or to offer to sell liquor without a license. The defendant here is accused of having committed that offence. It seems to me that, about the essential feature of the case, there is no dispute

in regard to the facts.  It is admitted on the part of the defendant that, in the first place, he was engaged and sold himself, individually, beer at five cents a glass, and whisky at ten cents a glass.  The defence, however, sets out this state of facts :—

" It appears that a club called the Ellsworth Club, which was duly chartered, was organized for the purpose of literary culture and improvement and as a social club.  The defendant, as they allege, was employed as the steward of that club, and the contention is, that since he sold it to persons who bought it in the capacity of members, and he being simply the steward of the club, that that constitutes a legal defence.  In other words, the right is claimed that a club may sell liquor to the members of the club.  In looking at the purpose of the charter of this club, it appears, as I have said, to have been for literary pursuits and for the improvement of the members and as a social club.

" It would seem, however, that in the liquor which was sold there was a profit.  That is conceded by two of the witnesses for the defence, one of them saying that there was a profit which went to the salary of the steward, and another one saying there was a little profit involved in the sale.  [It is difficult to see how the fact that these gentlemen have gathered together for this purpose affects the right which is denied by the statute of selling liquor without a license.  Certainly, their getting together as a club does not give them greater rights in that respect than they would have as so many individuals gathered together.] [1]  If this was a kind of distribution of what was common property it would be no offence.  That is, the statute does not seem to make it unlawful to buy, but it does make it unlawful to sell.  Two men could get together to buy liquor in common and distribute it as common property, but not to sell it.  So I take it a hundred men might put up a common fund and buy liquor with it and divide the liquor around, because there is no attempt to make a profit.

" But, apparently, in this case there was more.  There was not a distribution of common property of liquor among the members of the club, but there was a sale of it.  True, confined to members of the club, but a sale and a profit.  Under these circumstances [I instruct you, therefore, that if you be-

lieve the testimony which has been presented to you it is your duty to find that the defendant is guilty of the offence with which he is charged.] [2]   At the same time, it is a novel question which arises, and one of importance to the community, and it is deserving of serious and full consideration.   If the counsel, therefore, wish to make a motion for a new trial I shall grant that motion, and permit the defendant to renew his bail.   I am led to this course because a sister state seems to have adopted a somewhat different view of the same question. Again, there is a difference of opinion in the community.   The defendant here, if he has offended, has offended under the claim of right, and I, therefore, think it is important it should be carefully considered.   [I instruct you, however, for the purpose of your inquiry that the defendant is guilty if you believe the facts which have been testified to.] [3] "

The defendant submitted the following points which were refused by the court :

" 1. If the jury find from the evidence that the defendant was steward of the Ellsworth Club the verdict must be for the defendant. [4]

" 2. If the jury find from the evidence that the Ellsworth Club is an incorporated club ; that the liquors and beer used belong to the club, and were furnished only to members ; that no sales were made to persons not members, the defendant, steward of the club, is not guilty as charged in the indictment, and the verdict must be for the defendant. [5]

" 3. The verdict must be for the defendant."

Verdict of guilty and motion in arrest of judgment and for a rule for a new trial, which was overruled by the court and judgment entered on the verdict, in an opinion by PENNY-PACKER, J. (See Com. v. Tierney, 29 W. N. C. 194 ; 1 Dist. Rep. 17.)

Defendant appealed.

*Errors assigned* were (1–3) the portions of the charge in brackets, quoting them ; (4, 5) refusal of defendant's first and second points, quoting the points.

*John G. Johnson, Maxwell Stevenson* and *David C. Harrington* with him, for appellant.—The quarter sessions of Philadelphia has repeatedly dealt with sham clubs created to evade the

license laws. The importance of this case arises from the opinion of the learned judge who tried the case, that all genuine club organizations are forbidden by the act of 1887 to furnish to their members intoxicating liquors.

It is impossible for any club to obtain a license to supply liquors to its members under the provisions of the act of 1887. The steward is only a servant of the club. Its members do not buy their liquors from him. He is usually without the means to procure them. If a license is to be granted, it must be granted to the club, not to its servant. Yet a corporation cannot be a licensee to sell liquors at retail. Was it then the intention of the legislature, by the act of 1887, to strike at organizations which had so long existed and whose existence had never been deemed injurious to the public?

It is within the knowledge of the members of this court, as it is within the knowledge of all men who know anything about the social life of the commonwealth, that until the passage of the act of 1887, liquors were to be obtained in all the clubs of this commonwealth without any attempt to prevent the same and without any idea that it was forbidden. An examination of the act of 1887 will show that it contains little more by way of restraint than is found in the act of 1856. The later act is not a prohibitory act. Its object is to regulate their sale to the public, and to restrain the public sale to persons not in a fit condition to drink them.

Conceding that distribution of liquors among members of a club may be called a sale, and within the technical meaning of a sale as defined by text-writers, is it a sale within the spirit and meaning of this act? In the interpretation of statutes the courts do not feel compelled to follow the letter in violation of the spirit: Com. v. Fraim, 16 Pa. 169; Hart's Ap., 96 Pa. 367; Big Black Creek Improvement Co. v. Com., 94 Pa. 455.

What is the purpose of a club in using the common fund in the collection of a supply of food and drink? Is it to sell the same to its members within the meaning of what the world understands by that term, or is it to distribute amongst them what is thus purchased? The distribution must inevitably be unequal. Some men may want neither food nor drink; some may want food and not drink; some may want drink and not food; some may need more or less than others of both or of either.

To do justice to all, it is necessary, therefore, that a price shall be fixed which shall be paid by each member when he demands what is his right, to wit: a part of what has been purchased for him and his fellows. The price is not paid in the way in which a vendee compensates a vendor for interest bought. It is paid for the purpose of insuring just and equal distribution amongst the members of property purchased for their benefit.

There are some decisions in a few states in which substantially similar statutes have been interpreted somewhat as the learned trial judge interpreted our act of 1887. In some of these cases, however, the acts which were so construed were prohibitory; in others, what was sought to be done was to make effectual through a judicial decision what was plainly a fraud upon the act. In a number of other cases judges of intelligence and of great reasoning power have defined the meaning of acts similar to our own in the way we ask this court to define our act. Such cases are Com. v. Smith, 102 Mass. 144; Com. v. Pomphret, 137 Mass. 567; Com. v. Ewig, 145 Mass. 119; Graff v. Evans, L. R. 8 Q. B. D. 373; Newell v. Hemingway, 16 Crim. Law Cas. 604; Barden Co. Treas. v. Montana Club, 25 Pac. Rep. 1042; Piedmont Club v. Com., 12 S. E. Rep. 963; Tennessee Club v. Dwyer, 11 Lea (Tenn.), 452.

*Lewis D. Vail, George S. Graham,* district attorney, with him, for appellee.—The court below did not say or decide that the members could not legally obtain liquor in the club building. That is not the question. The question is whether the transaction between the Ellsworth Club and its members must be regarded as a sale. The question has been decided in the affirmative in many cases: State v. Essex Club, 20 Atl. Rep. .771; State v. Clubs, 73 Md. 97; People v. Soule, 74 Mich. 250; State v. Neis, 108 N. C. 787; People v. Andrews, 115 N. Y. 427; State v. Horacek, 41 Kan. 87; State v. Lockyear, 95 N. C. 633; Martin v. State, 59 Ala. 35; Rickart v. People, 79 Ill. 85; Marmont v. State, 48 Ind. 21; State v. Mercer, 32 Iowa, 405; U. S. v. Wittig, 2 Lowell, 466.

In the cases where a contrary decision seems to have been rendered, examination will show that the acts of assembly are clearly different from the act of 1887.

OPINION BY MR. CHIEF JUSTICE PAXSON, April 18, 1892:

The discussion of this case, both in the paper books and at bar, has taken a much wider range than its facts justify. All that is essential to its proper decision, can be considered in connection with the second specification of error, which is as follows: " The learned trial judge erred in charging the jury as follows: I instruct you, therefore, that if you believe the testimony which has been presented to you, it is your duty to find that the defendant is guilty of the offence with which he is charged." The third specification presents the same question in another form.

The defendant was indicted for violating the law by selling liquor without a license. It appears from the testimony that he had at one time been selling liquor under a wholesale license at his place, at the southeast corner of Twenty-third and Kimball streets, in the city of Philadelphia. He failed to obtain a license of any kind for the year 1891. The reason why it was withheld does not appear. There was evidence that the place had a very bad character. Shortly after the license was withheld, he was found selling liquor at the same place, and was indicted for the violation of the license laws. His defence was, that he was not selling on his own account, but as the steward of the Ellsworth Club, and that no sales were made to others than members of the club, unless brought there by a member. It was alleged that the club had been incorporated by the court of common pleas. Of this, however, we have no proper knowledge, as we have not been furnished with a copy of the charter and by-laws, if any there be. This is of very little importance. Assuming it to have been regularly chartered, the question arises upon the evidence, whether it was a bona fide club, organized for social or other proper purposes, or whether it was a mere scheme or device to evade the license laws. A careful examination of the evidence leaves us in no doubt upon this point.

We find the defendant, a very short time after his license had been refused, selling liquor in the same old barroom that he had used under his wholesale license. It was a small room, out of which everything had been removed but a few tables and a few chairs. A place of about six feet square had been partitioned off from the room from which the liquids were being dispensed. This little room was the club room, the balance of the house

being occupied by the defendant and his family. He claimed to be the owner of the house, and to have rented the barroom to the club at a rent of ten dollars a month; that he was employed by the club as its steward at a salary of sixteen dollars per week; that all the liquors were purchased by and belonged to the club; and that he merely dispensed them as its agent or steward. Each member of the club appears to have been furnished with a key by which to obtain admission to the club room.

One witness for the commonwealth testified: " I pass there frequently, and, by observation, I found a vast number of men coming out of his place, drunk, on Sundays and through the week, four or five going in at a time, having keys. One day I met him and asked him to give me a key. He said: It is a club. If you become a member of the club you can come in, but if you will come in with one of the members, or one that has a key, I will give you all you want. I told him I liked a glass of beer occasionally. He said he served the club, and if I came in with them I could have beer." A number of members of the club were called by the defendant, some of whom stated that the initiation fee was twenty-five cents, and the weekly dues ten cents. Others put it at twenty-five cents. As we were not furnished with a copy of the charter, we can only state the object of the club, as given by these witnesses. The main purpose, as we gather it from their testimony, appears to have been sociability, and, to some extent, mental improvement. Its literary department consisted of two penny newspapers, and the Police Gazette. All of the defendant's witnesses testified that the proceedings were conducted in an orderly manner, and that beer was furnished them at five cents a glass, and whisky at ten cents.

We need not further refer to the circumstances under which this alleged club was formed. The evidence abundently shows that it was a mere sham, a device to evade the license laws. It was a club in form; in fact, it was a mere barroom, where liquor was sold without a license. There was a clumsy attempt to disguise its real character, and throw over it the protecting mantle of the law. The latter is not so feeble, however, that it cannot pierce such a thin covering as this. It follows, from what has been said, that it was not error in the court to instruct the jury that, if they believed the testimony which was pre-

sented to them, it was their duty to find the defendant guilty of the offence with which he was charged.

We decline to discuss the rulings of the court, referred to in the fourth and fifth specifications, for the reason that the rights of a bona fide club are not involved in this case, and we prefer to decide only what is legitimately and necessarily before us. We rule this case upon its own facts. Were we to countenance such a sham as this, any man who is refused a license can get a few of his customers to sign a paper, constituting themselves a club; rent them his barroom, have himself appointed a steward, and, by such clumsy device, evade the law. We cannot dignify such an association by treating it as a club.

Judgment affirmed, and the appellant is required to undergo the sentence imposed by the court below.