## Commonwealth of Pennsylvania *v.* Joseph Smith, Appellant.

*Liquor law—Club sales.*

An unlicensed sale of liquor, under guise of club distribution, would be clearly unlawful and the law will look through all disguises and so pronounce it.

Where however a bona fide organization with a selected membership made up of reputable persons, really owning its property in common, and formed and carried on for purposes to which the furnishing of liquor to its members without profit was merely incidental, and where such club is not a scheme to evade the license law, the fact that the club members are able to procure and pay for liquor on the premises does not constitute an illegal sale thereof.

The purpose of the club system is to distribute the advantages, comforts and luxuries of the club among members so there shall not be unequal contributions to the treasury which purchases them. Members are all owners of the property when purchased in equal shares and if a division were then made, each would then be entitled to an equal share of the liquor, but one consumes his share and that of the others who do not

drink liquor and he puts back into the common treasury the value of the others' shares; therefore, although by consumption the division is not equal, yet it is made equal by the contribution to the treasury, that has neither lost nor gained, consequently the distribution is equitable. Such contribution does not constitute a sale. There is no element of bargain, only a method of distribution of the common property.

*Practice, Superior Ct.—Assignments of error—Rule XVII.*

Where an assignment of error relating to the admission or rejection of testimony is so drawn that it does not show the testimony adduced or proposed to be adduced under the offer admitted or rejected, but merely discloses a question propounded and objected to and admitted or refused, it is not in conformity with rule XVII. and will be disregarded.

*Practice, Superior Ct.—Assignments of error—Unanswered question.*

Even where the objections to questions asked, which are overruled, are well taken, yet when the witness did not in point of fact answer such questions the error in overruling the objection, as it did no harm, is not proper ground for assignment of error.

*Practice, Q. S.—Improper remarks by counsel.*

The prosecuting attorney in criminal cases is so far counsel for the defendant that he ought not to permit himself nor be permitted without correction, if objection is promptly made, to assert in his closing argument to the jury the existence of criminating facts of which there is no evidence in the case.

*Practice, Superior Ct.—Remarks by counsel—Improper assignment of error.*

An assignment of error for "permitting" improper remarks by counsel is not sustained by the record where the record does not affirmatively show that the court "permitted" the counsel to make the remarks or that the judge's attention was called to them at the time they were made or at any time when he could have prevented or counteracted their harmful effect, or that he was asked to do anything concerning them.

An assignment will not be sustained when neither of the methods recognized in Com. v. Weber, 167 Pa. 153; Holden v. Pa. R. R., 169 Pa. 1, and Com. v. Windish, 176 Pa. 167, for bringing the remarks of counsel upon the record, so that the action of the trial court with reference thereto can be reviewed by the appellate court, was adopted.

Argued May 11, 1896.   Appeal, No. 15, April T., 1897, by defendant, from judgment of Q. S. Washington Co., Nov. Sess., 1895, No. 84, on verdict of guilty.   Before RICE, P. J., WILLARD, WICKHAM, REEDER, ORLADY and SMITH, JJ.   Reversed.

Quarterly return of W. S. Tidball, constable of the second ward of Monongahela City, made to court of quarter sessions,

Washington county charging tippling and unlicensed houses. " Joseph Smith and Joseph Kloman are selling whisky and beer without a license." Before TAYLOR, J.

There was evidence establishing or tending to show the following facts:

The defendant was a member, and the janitor or steward of a chartered association styled " Turn and Gesang Verein Eintracht of Monongahela, Pa.," which is a branch of the National Turners Association of North America. As appears by the charter the association was formed " for the purpose of promoting music, vocal and instrumental, employing a competent person to impart instruction therein, erecting, establishing and equipping a gymnasium and the erection of a hall or building wherein the above purposes may be carried out and conducted and entertainments of a public or private character may be given." The association occupies the entire third story of a building in Monongahela City in which are its gymnasium, library, music hall, assembly and reading rooms.

These rooms which are open every day and evening are used as a place where the members meet for social intercourse and are in the charge of the janitor or steward. The association has a membership of about one hundred. Members must be at least twenty-one years of age, and to obtain admission their good character must be vouched for and a written application must be made which after lying over ten days is then voted on. The children and wives of members are admitted to the privileges of the gymnasium and music rooms, and the association employs instructors in vocal and instrumental music, dancing and gymnastics. There was evidence that aside from this no one is admitted to the rooms except the members and their guests, and that no one is admitted as a guest who resides within three miles of Monongahela City. Members are required to pay an initiation fee and regular dues, but the amount of these is not stated in the evidence. The affairs of the association are managed by a president, secretary, treasurer and board of trustees. A stock of liquor was purchased with the funds of the association and placed in charge of the defendant which he furnished to such members as desired it in the following manner. The trustees sold to the members checks or tickets which they would exchange for liquor or beer. On some

occasions the trustees left them with the defendant, and members desiring them could obtain them from him, he turning over to the trustees the amounts received. The defendant claimed that the association did not make a profit on the liquors thus furnished, the proceeds being used to replenish the stock from time to time. The evidence was uncontradicted that the defendant was paid a salary of $20.00 a month out of the treasury of the association for his services, and he received no profit out of the liquors.

The charge of the court was as follows :

The defendant, Joseph Smith, has been indicted by the grand jury for a violation of the act of assembly, passed in 1887, and commonly known as the Brooks act, in which the title to that act states that it is to restrain and regulate the sale of vinous, spirituous, malt and brewed liquors, or any admixtures thereof ; the purpose of the act being, then, to restrain and regulate the sale of these classes of liquors. The act itself then proceeds to set forth, that it shall be unlawful to keep or maintain any house, room or place, hotel, inn or tavern where any vinous, spirituous, malt or brewed liquors, or any admixtures thereof, shall be sold by retail, except a license therefor shall have been previously obtained as hereinafter provided, and that provision for obtaining a license is by application to the court, and after a hearing under the rules and a compliance with the first section of the act of assembly relating thereto, a license is granted or not granted. Under the act of assembly, gentlemen of the jury, there are no persons that can engage in the sale of these classes of liquors, except they previously obtain a license from the court so to do, or that they shall fall under the class—if we may call them a privileged class—mentioned in the 16th section of the act, which says that druggists and apothecaries shall not be required to obtain a license under the provisions of this act, but they shall not sell intoxicating liquors except upon a written prescription of a regularly registered physician ; alcohol, however, or any preparations containing the same, may be sold for scientific, mechanical and medicinal purposes.

Now, the defendant in this case may be said to be indicted—is indicted, under the first section of this act of assembly. [It would be a matter of defense here for him, if he had a license,

to set it up, or if he came within the provision or was a practicing apothecary, as described in the other section of this act. It is not contended, however, upon his part that he has any such license, or that he falls within any of the provisions of the act of 1887, which would entitle him to sell vinous, spirituous, malt or brewed liquors or admixtures thereof, unless he has a right to sell them as steward or janitor of a club such as was in existence, and of which he was acting as janitor or steward in this case—this Eintracht Singing Society, which has been described in your hearing, which is a corporation, organized for the purposes stated in the charter which was read in your hearing and which contains no provision in it for the sale of any of the liquors coming within the prohibited classes. The only claim, then, gentlemen of the jury, if the testimony in this case is true—and it is really undisputed as to how the defendant did sell or did furnish the liquors which is claimed by the commonwealth as amounting to an unlawful sale, and which the court will hold was an unlawful sale, if the facts are as have been testified to here] [6]—but upon those facts you are to pass, gentlemen—[I say it is claimed that he, being a steward of this club, or the janitor, had a right to dispense liquors to the members of the club. Now, gentlemen, you can readily see, if that thing is carried out, to what it would lead. We take the act of assembly and we find in it nothing that gives the defendant any right to dispense liquors in that club. It is true, as has been stated here, that there is nothing to prevent us, under our personal rights, belonging to a club, and that we may have liquors there for our own use but, as I understand this law, not in the sense that has been testified to here, or in the manner that has been testified to in this case.] [7] We would have a right, without violating any law, to belong to a club of this kind, whose purposes are perfectly praiseworthy, and to take our stock of liquor there or to send a man with them there and have them kept where we could get at them, and where we could take our friends; [but to hire a man, and have liquors shipped in there in bulk, and have a counter, and buy checks from that man who dispensed the liquor, and pay him the money, and not be limited as to quantity or anything of that kind, it is a question for you to say, gentlemen of the jury, whether it is not an open bar without the legality that surrounds a bar that has a license.] [8]

Now, we will construe the law as we understand it to be—
that a party, to engage in the lawful sale of liquors, must have
a license. [If he has not a license to dispense liquors, either
directly for cash, or by a system of checks—because we will
say to you that the checks used here would simply be an at-
tempt to evade the law if they were used to surround this trans-
action with a legality that, otherwise, it didn't have—and it
was admitted by counsel, I believe, that the money could have
passed just as well as the checks] [9] [if this was legal under
this act of assembly under which the defendant is indicted, as
it was carried out in this particular place, as we interpret this
law, it would amount to a substitute for the license laws en-
tirely.] [10] [The right to set up and maintain a place and
carry it on as this was in Monongahela City, would carry with
it the right to set up a dozen or more places, and you can readily
discover that there would be no necessity for the license laws
at all;] [11] because with a hundred people belonging to this
society, and a hundred to another, and so on, the entire popula-
tion of the place could become members of these different organ-
izations and in that way completely nullify the act of assembly
which required that this class of liquors should be restrained
and regulated by licenses by the courts; it would do away with
it entirely.

Now, gentlemen of the jury, we do not intend to review the
evidence. [You will bear in mind how these liquors were sold
and how they were paid for, and where they were drank—how
they were drank; and also the evidence in the case on the one
side that a fund was derived from which not only the stock of
liquors was replenished, but that it was used for other purposes
of the society, as for laudable purposes, charitable purposes, but
none the less bringing the sales made here clearly within the pro-
hibitive part of this act of assembly.] [12] On the other hand,
some of the witnesses testified that this money did not go to
any other purpose but to replenish the stock of liquors. Now,
that is a question for you, and we say to you that there are
some courts below, perhaps, that hold that liquors may be put
in a club like this, or some place similar to this, and dis-
pensed, where the purposes are not to evade the law by a sub-
terfuge or cover, or to make a place particularly convenient for
a large class of men to get their liquor where, otherwise, they

couldn't get it under the license system; but to take it there and use it, with their friends, be the sole owners themselves, individually, of the particular stock they use—that that would not be a violation of the law; but you can readily see, gentlemen of the jury, there are two or more ways in which that can be conducted, and be a violation, clearly a violation of the act of assembly on the one hand, and perhaps not on the other.

Now, it is for you to say, under all the evidence in this case, whether or not this singing society dispensed liquor there in violation of the law as we have given it to you, and particularly this defendant. And we have nothing further to say to you, except that the counsel for the defendant have asked the court to charge you:

1. The act under which the defendant is indicted is a penal statute, and does not prohibit two or more persons or any number of persons from contributing to a common fund for the pur chase of liquors and receiving vouchers therefor entitling them to receive a proportionate share of the liquors purchased. Nor does it prohibit such persons from employing a janitor or steward to serve the said liquors to the persons contributing to said fund.

Affirmed as a proposition of law, but it is for the jury to say whether what was done by the defendant in this case brings him within the proposition covered by this point. [13]

2. In order to convict, the commonwealth must prove beyond a reasonable doubt that the defendant, Joseph Smith, did receive money or other valuable consideration in exchange for malt, brewed, vinous or spirituous liquors, or did offer the same in exchange for money or other valuable consideration. To constitute a sale the absolute or general property in the thing sold must pass from the seller to the buyer. If the defendant acted only as a steward, and set out the liquors to those who had contributed to the fund, and had no interest in the fund except as a common contributor, he cannot be convicted.

Affirmed, if the jury find from the evidence the facts to be as stated in this point. [14]

3. If the jury find from the evidence in the case that the defendant, Joseph Smith, at the time of the furnishing or sale of the liquors named in the indictment, was a member of a chartered club or association, and acted as a janitor or steward

thereof, and furnished such liquors only to members of the association, and that the liquors so furnished were purchased with the funds of the association, and that neither the defendant nor the association derived a profit from the sale or furnishing of said liquors to its members, their verdict should be not guilty.

Under the undisputed evidence as to how the liquors were furnished by the defendant in this case, this point is refused. [15, 16]

Gentlemen of the jury, it is your duty to be satisfied of the defendant's guilt beyond a reasonable doubt. If you have any reasonable doubt as to his guilt it is your duty to acquit him,— give him the benefit of the doubt and acquit him; if you have not, it is clearly your duty to find him guilty. This being a misdemeanor, if you should find him not guilty you must dispose of the costs. [The return here was made (some reference has been made to it by counsel) at the direction of the court, who received notice asking the court to instruct the constable, if he failed to make a return on a particular day, to call his attention to the matter, to this particular place. And in pursuance of that Mr. Tidball, the constable, was directed to go . back to Monongahela City and make an investigation. He was called here in court, on the day he made his return, which was on the blank usually used, and these notices, which had been sent to both Judge McIlvaine and myself, were handed over to the constable and he was asked if he knew anything about it; and he was directed by the court to go back and make an investigation, and you heard him on the stand state what he did in pursuance of that direction; and he appears here as a public officer and the prosecutor in this case; and where you acquit, it is your business to dispose of the costs in a misdemeanor, and you should not put them on a public officer where he has acted in the line of his duty and had reasonable grounds for instituting the prosecution. If you convict, however, you have nothing to say about the costs.] [17]

On behalf of defendant exception noted to the general charge and answers to points.

Verdict of guilty, with a recommendation to the mercy of the court. Defendant was sentenced to pay costs and a fine of

482          COM. *v.* SMITH, Appellant.

Charge of Court—Assignments of Error.     [2 Super. Ct.

$500, and undergo imprisonment in the workhouse for three months. Defendant appealed.

*Errors assigned* were, (1) in overruling the objection to the form of question and testimony of Eugene Craven, a witness called in behalf of the commonwealth, as follows: "Have you within two years past gotten any liquor, beer, ale, whisky, wine, from Smith?" Objected to as incompetent and irrelevant. By the Court: Objection overruled, exception for defendant, and bill sealed; (2) in overruling defendant's objection to question by district attorney to Eugene Craven, a witness called by the commonwealth, as follows: The refreshment attachment, including the drinks that you testified you had on yesterday, in which it was shown Mr. Smith was found at the time he was visited, was a part of the place for the education of your families and children, was it? Objected to as leading, irrelevant and improper, this being a witness for the commonwealth. By the Court: Objection overruled, exception noted for defendant, and bill sealed.

(3) In overruling defendant's objection to question put to defendant, Joseph Smith, on cross-examination, as follows: "Is there any place in the charter authorizing this company to sell liquor? A. We are not selling. Q. Will you answer my question?" Objected to as incompetent. By the Court: Objection overruled.

(4) In permitting the private counsel, Mr. Parker, for the commonwealth, to make use of the following statements, in the course of his argument to the jury, to which exceptions were taken at the time by defendant's counsel:

"Nothing does more to bring into disrepute courts of justice, than what has been done in this case from beginning to end."

"The evidence of good character offered by the defendant, has no bearing on the question in any way, and its introduction in this case was for an improper purpose."

"I say that no court in christendom, or heathendom either, ever held that sales such as these were held to be legal."

"If they want, every citizen in Monongahela could go to this bar every day in the year, and obtain what liquor they wanted."

"That if Smith had had time to have gone back to Germany,

and the trustees were here, there would be no testimony about sales of tickets by the trustees."

"We have a bar there, open Sunday, Monday or any other day."

(5) In sustaining the objection to the testimony of Eugene Craven, a witness called in behalf of the commonwealth, on cross-examination, relating to the character of the club, and the manner in which it was conducted, as follows :

Q. How does it compare with other gymnasiums ? A. Well, I have traveled around, I have been in ten or fifteen different states in the union; been in other societies ; I never in all my travels, all my experience, been in Pittsburg, St Louis, Cincinnati, Cleveland, all our eastern states,—I never in my life met with a club that was managed and conducted in such a straightforward and gentlemanly manner in every respect as this one was in Monongahela. They live up to their by-laws, and then another thing—this is in a manner—it is conducted in a charitable way. Now, we donated there at one time—I believe it was $50.00 or $100 ; I am not sure ; towards the—

Objected to as incompetent and irrelevant.

And further, the court erred in making the following comment in sustaining the objection. The Court: "We do not think this is competent. We do not see that the fact that this is a club, or an incorporated club, makes it different from any other club if intoxicating liquors were disposed of there by systems of checks, which represented value or money. The question is, were liquors furnished there in violation of the law ?

(6–12) errors in portion of the judge's charge, reciting same ; (13–15) error in answers to defendant's points, reciting same ; (17) in charging the jury as to the contents of an anonymous letter received by the court asking that this return be directed, said letter not having been introduced in evidence.

*Charles G. McIlvain*, and *Jno. M. Braden*, for appellant :— The testimony does not disclose the fact that this club was a mere scheme or device to evade the license laws, which would bring it under the authority of Com. v. Tierney, 148 Pa. 552 ; Com. v. Carey, 151 Pa. 368. The act of 1887 is penal in its character and must be strictly construed : Com. v. Fleming, 130 Pa. 138. The fact that clubs of the nature of this one are not

484 COM. *v.* SMITH, Appellant.

Arguments—Opinion of the Court. [2 Super. Ct

included within the provisions of the act of 1887 has an impor
tant bearing upon the meaning to be placed upon the provis-
ions of the act, and in this connection the construction placed
upon this penal statute by public officers charged with the duty
of executing its provisions for many years may properly be
taken into consideration as determining the legislative intent.
Such has been the law in other states: Potter's Dwarris on
Statutes, 183, 184; People v. Daton, 55 N. Y. 367–378; Brown
v. U. S., 113 U. S. 568. The courts in this state have never
declared that dispensing liquors to club members amounts to a
technical sale by the club: Klein v. Livingston Club, 5 Dist.
Rep. 85. If it is desired to reach the clubs and make the
transaction an object of state control, it must be by new legis-
lative enactments and not by judicial legislation upon any of
the present sale statutes: Covington in Penna. Law Series,
347. The most recent case on the subject is the case of New
York v. Adelphia, decided April 7, 1896. The section of the
license law of New York under which the case was tried was
similar to the section of our Brooks law. See Laws of New
York, 1892, sec. 31 of chap. 401; People v. Andrews, 50 Hun
(N. Y.), 592; see also 11 Am. & Eng. Ency. of Law, 727; 22
Am. & Eng. Ency. of Law, 810; Black on Intoxicating Liq-
uors, sec. 142; Graff v. Evans, L. R. 8 Q. B. Div. 373, and
State v. St. Louis Club, 26 L. R. A. 573.

*W. S. Parker*, with him *T. B. H. Brownlee*, district attorney,
for the commonwealth.

OPINION BY RICE, P. J., October 19, 1896:

We agree with the court below in holding that the system
of checks adopted by this association did not make the transac-
tion essentially different from what it would have been if the
members had paid the janitor or steward directly for the liquor
furnished, and he had turned over the money to the associa-
tion. We agree also, that if the object of an association is
merely to provide members with a convenient method of ob-
taining intoxicating drinks whenever they desire them and if
the form of membership is no more than a pretense, so that
any person without discrimination can procure liquor by sign-
ing his name in a book or buying a ticket or a check, thus

enabling the seller to conduct an illegal traffic under the guise
of a club distribution, the fact that the organization is a char-
tered institution will not protect the seller: Black on Intoxicat-
ing Liquors, par. 142. This was decided in Com. v. Tierney,
148 Pa. 552, and was substantially reaffirmed in the late case
of Klein v. Livingston Club, where Justice DEAN says: "If
this were an unlicensed sale, under the guise of club distribu-
tion, it would clearly be unlawful; the law would look through
all disguises, and so pronounce it." But there was evidence
that this was a bona fide organization with a selected member-
ship made up of reputable persons, really owning its property
in common, and formed and carried on for purposes to which
the furnishing of liquor to its members without profit was
merely incidental. Of course it was for the jury to determine
what the facts were; all that we are required to say, or do say,
is, that there was ample evidence to warrant a jury in finding
the foregoing facts. Assuming, then, that a jury might find
that the transaction was a furnishing of liquors by a bona fide
club to its own members without profit, each paying for the
share of the common stock furnished to him, and that it was
not a scheme to evade the license laws, the question arises
whether it was an illegal sale. At the time the case was tried,
this was an unsettled question concerning which conflicting
opinions were held. Since that time it has received thorough
and deliberate consideration by the Supreme Court and has
been resolved against the contention that such a transaction is
an illegal sale within the meaning of the act of May 13, 1887,
known as the Brooks Law: Klein v. Livingston Club, 177 Pa.
224. Says Justice DEAN: "The purpose of the whole system
is to distribute the advantages, comforts and luxuries of the club
among the members so that there shall not be unequal contribu-
tions to the treasury which purchases them. They are all owners
of the property, when purchased in equal shares, and if a divi-
sion were then made, each would be entitled to an equal share of
the liquor; but one consumes his share and that of the others
who do not drink liquor, and he puts back into the common
treasury the value of the other's share; therefore, although
by consumption the division is not equal, yet it is made equal
by the contribution to the treasury, that has neither lost nor
gained, consequently the distribution is equitable. Does this

constitute a sale? We think not; there is no element of bar-
gain, only a method of distribution of the common property."
Applying these principles to the facts which a jury might well
have found from the evidence before them, the court below
should have charged the jury, that, upon such a state of facts,
the transaction would not be an illegal sale for which the de-
fendant could be convicted. Separate discussion of the several
assignments of error raising this question is unnecessary. So
far as the rulings specified therein are in conflict with the fore-
going conclusions, the assignments are sustained.

The other assignments will be briefly considered in their
order:

First assignment. This is not in accordance with rule XVII.
because the answer of the witness is not given. The reasons
for this rule and the importance of conforming to it are so clearly
shown in Battles v. Sliney, 126 Pa. 460, that we need only refer
to that case.

Second assignment. Even if the objection that the question
was leading was well taken, yet as the witness did not answer,
no harm was done. If it was apparent that the only purpose of
the question was to ridicule or humiliate the witness, who had
been called, by the counsel putting it, it should have been re-
jected on that ground. But of this the trial judge was better
able to judge than we, and we are not clear that he erred in the
exercise of his discretion in that regard.

Third assignment. As the charter had been put in evidence
it was incompetent and a mere waste of time to ask the defend-
ant what its provisions were. But as he did not answer the
question the error in overruling the objection did not harm him.

Fourth assignment. The stenographer's notes show that, after
the evidence was closed, but whether before or after the jury
were charged does not affirmatively appear, the counsel for the
defendant asked " to have the remarks of the district attorney
in his argument, to which they desire exceptions, to be placed
on the record." Then follow the remarks quoted in the assign-
ment, and then the notes show that an exception was noted and
a bill sealed for the defendant. The assignment is that the
court erred in permitting the counsel to make the remarks
quoted. Some of the statements alleged to have been made by
counsel were outside reasonable limits and we remark generally

that the prosecuting attorney in a criminal case is so far counsel for the defendant that he ought not to permit himself, nor to be permitted without correction, if objection is promptly made, to assert in his closing argument to the jury the existence of criminating facts of which there is no evidence in the case. But we are not clear that the assignment is sustained by the record. The record does not affirmatively show that the court "permitted" the counsel to make the remarks, or that the judge's attention was called to them at the time they were made, or at any time when he could have prevented or counteracted their harmful effect, or that he was asked to do anything concerning them. Neither of the methods recognized in Com. v. Weber, 167 Pa. 153; Holden v. Penna. R. R., 169 Pa. 1, and Com. v. Windish, 176 Pa. 167, for bringing the remarks of counsel upon the record, so that the action of the trial court with reference thereto can be reviewed by the appellate court, was adopted. We are therefore unable to sustain the assignment.

Fifth assignment. This is overruled for the reason that the record does not show that the ruling was excepted to at the time.

Seventeenth assignment. The learned judge did not charge the jury as to the contents of an anonymous letter not put in evidence. He did speak of a notice he had received in consequence of which he directed the constable to investigate the case. This explanation of how the return came to be made ought to have been unnecessary, but it was evidently called out by remarks of counsel. Its only effect was to show that the costs ought not to be put on the constable in case of acquittal. If the language of the charge had been quoted totidem verbis in the assignment as rule XVI. requires, its purpose would have been apparent, and it would also have been seen at once that it did not harm the defendant.

Judgment reversed and a venire facias de novo awarded.