# Commonwealth of Pennsylvania *v.* George Brem, Appellant.

*Liquor law—Fictitious club distribution.*

An unlicensed sale of liquor, under the guise of club distribution, is clearly unlawful and the law will look through all disguises and so pronounce it.

Argued May 6, 1897. Appeal, No. 173, April T., 1897, by defendant, from judgment of Q. S. Allegheny Co., Dec. Sess., 1896, No. 572, on verdict of guilty. Before RICE, P. J., WILLARD, WICKHAM, BEAVER, REEDER, ORLADY and SMITH, JJ. Affirmed.

Indictment for selling liquor on Sunday and for selling liquor without a license. Before WHITE, P. J.

The facts of the case sufficiently appear from the following charge of the court below:

This case gentlemen, is an illustration of the frauds frequently practiced by parties applying to the court for a charter, and it is also an illustration of the schemes resorted to by parties to violate our laws in reference to the sale of liquors. Some parties applied to the court of common pleas of this county for a charter, under our act of assembly in relation to corporations. This purports to be an application for the charter of a corporation called "The Turner Hall Association of Munhall, Pennsylvania." It set forth the purpose of the corporation as follows: "Said corporation is for the purpose of acquiring and holding a piece of ground situate in the Township of Mifflin, County of Allegheny, State of Pennsylvania, and of erecting thereon a hall and fitting up the same with gymnasium, to promote physical culture and innocent athletic exercises and sports, and for the purpose of maintaining the same, and is not for profit." Now, that is the purpose set forth in this application—for the purpose of purchasing ground and building on it a hall for athletic exercises and amusements of that kind, in the hall proposed to be erected. Under our act of assembly, in an application for a charter the purpose for which it is to be organized

must be set forth. Very frequently applicants for a charter set forth simply the purpose in the brief language of the act of assembly, intending afterwards to get up a constitution and set of by-laws, as was done in this case, and a constitution setting forth an entirely different purpose of the organization.

We have very frequently of late found it necessary to refuse these applications unless the purpose is set forth more particularly than is often done. Some years ago a party applied in our court No. 2 for a charter, setting forth its purpose just about the same as is set forth in this application. I refused the charter, and filed an opinion at the time, giving the reason for refusing—stating that the purpose was too indefinite, and there was danger of such corporations being perverted to an improper purpose. The attorney who made that application in our court went into No. 3 of this county and made a similar application, not letting that court know that he had been refused in No. 2, and got a charter from that court. In a very short time they started a drinking saloon, I think in this same township—it was on the south side of the river—and, when brought up into court, presented their charter as a justification for keeping a drinking club. It then developed that the application had been refused in No. 2, and the court of No. 3 brought up the attorney, and he ought to have been expelled from the bar, but he begged off and said he did not mean to impose upon the court, and made some other apologies, and they let the thing go; but the charter, as they decided, was a fraud upon the court.

This charter was evidently gotten up as a fraud upon the court, because the conduct of the association since that abundantly proves that this was a mere pretext to get up a drinking club in Mifflin township. They did not do one single thing in pursuance of this charter for two years after the charter was obtained, and, in the meantime, carrying on this drinking club out there by this man, the defendant, as the president of the club. Finally, they entered into an article of agreement, dated the 23d of June, 1894, for the purpose of purchasing two vacant lots out in Mifflin township, and on that article of agreement there have been several payments, most of them $2.00, and $1.00, at a time—some two or three $5.00 payments, one $20.00 and one $15.00. The total payments made on that article of

agreement, according to my footing up, would be $138, that they have paid in two years and a half. The original consideration was for the sum of $200, and for two years and a half they have not paid, counting the interest, the one half of that, and never have put up any building at all.

This man, the defendant, rented a house out there at $5.00 a month, where he has been living himself—a man with a wife and children—and has not been living with his wife or with any of his children, but out there himself in this building with three rooms, one of them used, as he says, as a kitchen, the room where these tables are where the liquors are sold. One of the rooms, he says, he uses as a shoemaker shop, and the other one as a sleeping room. And, according to the evidence, that club has been going on for five years, from the time, I presume, their charter was obtained, and conducted solely for a drinking saloon,—not an effort made to carry out the purpose declared in their charter. But it seems they got up, after they got their charter, what they called their constitution, and their constitution was for the organization of a drinking club. It provided that the members could get these things, and that each member could bring in a stranger, and in that way accommodate not only the members, but others that might be brought in by the members ; and that was carried on for two years before there was a first step taken towards purchasing a lot or erecting a hall.

Now, the court never would have sanctioned that charter that is put in evidence here if they had known that there was anything of that kind contemplated. The charter never would have been obtained. It is a fraud upon the courts to get up a charter of this kind, and then get a constitution that relates to other matters, and not at all relating to the purpose of the corporation ; and this club out there has been nothing but a drinking club all this time. And, according to the testimony, it is mainly a drinking club for Sunday gatherers, and the only athletic sports that have been given in evidence here, or referred to, was by one witness—the wheeling of a wheelbarrow on Sunday, blindfolded, and to see who could strike some object ; sometimes a little running. Why, it is palpable that this was a stupendous, glaring fraud upon our license laws.

Counsel has referred to some decision of the Supreme Court in reference to a case. That has nothing whatever to do with

this case.   This case doesn't come within any of the thoughts
or provisions of the decision of the Supreme Court in that case.
Why, gentlemen, if a thing of this kind is to be sanctioned, we
will have in every hollow and every secret place in the county
of Allegheny a drinking club organized this way; and they are
the biggest curse in a community.   These drinking clubs for
Sunday gatherings out in a hollow, as this is, are a curse to the
community and a curse to the whole country around.   Why, it
is in evidence here that drunkenness has been going on there,
and fights going on there, on Sunday.   Of course those things
follow.   Of course those things follow where there is this kind
of a club going on, and where their regular business meetings
are on Sunday, as the defendants say.   What would our license
laws amount to with this kind of thing?   Our license laws re-
quire men to have licenses and requires them to give bond—to
get a license from the court after showing that they are fit men
to sell liquor.   They have to pay for it, and have to pay in cities
and boroughs a pretty high price to get the privilege of selling;
and they come under bond, with sureties, that they will not sell
on Sunday; they will not sell on an election day; they will not
sell to a minor; they will not sell to a man of intemperate hab-
its; yet these clubs of this kind will sell to anybody and on all
occasions; and especially it is a club for Sunday carousal and
Sunday drinking.

It is a fraud upon those who get licenses, those who pay for
the privilege of selling.   If we should countenance a thing of
this kind, we would have these clubs springing up in every
township in the county; and not only a fraud upon those who
have licenses, but it would be a terrible curse in the community
where they are.   Nearly all the evils of intemperance result
from the violations of our liquor laws.   If the men who have
license would keep our laws—and they are bound to when they
get a license, and they give bond with surety that they will—I
say, that if they would keep the law on the subject, we would
have little evil resulting from the sale of liquors.   But it is these
speak-easies that start up without license, sell secretly, and, as
a matter of course, violate every provision of the license laws.
But these clubs are ten times worse than an ordinary speak-easy.

Now this defendant has been acting as a kind of president of
that association or organization.   What does he do?   He buys

the liquor, lays it in; and, according to his own testimony, the members get the beer from him and they pay so much.  They pay him, he says, for it, as they get it.  Others that came in there, who were not members of the club, put it on the table, according to some of the testimony.  That is another way of whipping the devil around the stump.  All these speak-easies and clubs resort to something of that kind.  They have a place where they put the money in, or they lay it on the counter, or something of that kind.  All that is only a scheme to try to evade the law.  [But if nobody had ever got a glass of liquor in that place except members of the club, I say it is grossly in violation of our laws on the subject—wholly unauthorized.] [1]

Of course, gentlemen, under this charge of mine, if you believe the testimony, why, your verdict ought to be guilty; guilty of selling without a license, and guilty of selling on Sunday.

This oral charge was taken down by a stenographer employed by the defendants.  I am willing to accept it as he has written it out, without correcting some minor errors and at defendant's request seal a bill of exceptions.  It is also ordered to be filed.

Verdict of guilty and sentence to pay a fine of $50.00 costs of prosecution and undergo imprisonment in the workhouse of Allegheny county for the period of thirty days.

*Error assigned* was portion of the judge's charge, reciting same.

*John F. Cox*, for appellant.

No paper-book or appearance for appellee.

OPINION BY RICE, P. J., July 23, 1897 :

As the evidence has neither been printed nor brought up with the record, we have no means of determining whether the instruction complained of in the single assignment of error was erroneous or was justified by the facts of the particular case, except by a reference to other portions of the charge.  If the testimony was correctly recited in the charge the learned judge was clearly right in instructing the jury that if they believed it they ought to return a verdict of guilty.  An unlicensed sale of

liquor under the guise of club distribution is clearly unlawful, and the law will look through all disguises, and so pronounce it: Klein v. Livingston Club, 177 Pa. 224; Commonwealth v. Tierney, 148 Pa. 552 ; Commonwealth v. Smith, 2 Pa. Superior Ct. 474. In the last cited case the defendant furnished ample testimony to warrant a jury in finding that the association of which he was steward was a bona fide organization with a selected membership made up of respectable persons, really owning its property in common and formed and carried on for purposes to which the furnishing of liquor to its members, without profit, was merely incidental. We held that this evidence was sufficient to carry the case to the jury to find whether the transaction was a furnishing of liquors by a bona fide club to its own members without profit, each paying for the share of the common stock furnished to him, as claimed by the defendant, or was a mere scheme to evade the license laws as claimed by the commonwealth. But in this case, judging from the facts recited in the charge, the testimony, including that of the defendant himself, left no room for doubt that the business carried on by him was the unlawful sale of liquors without license and on Sunday, with scarcely an attempt to disguise it. The law would be feeble indeed if it could not look through so thin a disguise and pronounce the real character of the transaction. As well as we can determine without having the evidence before us the case is ruled by Commonwealth v. Tierney, and not by Commonwealth v. Smith.

The judgment is affirmed, and it is now ordered that the defendant George Brem, be remanded to the custody of the keeper of the workhouse of Allegheny county, there to be confined according to law and the sentence of the court below for the residue of the term to which he was sentenced and which had not expired on the 20th day of March, A. D. 1897, when bail for appeal was perfected, and that the record be remitted to the court below to the end that the sentence and this order be carried into effect.