Opinion by
Morrison, J.,
The defendant was indicted, convicted and sentenced to pay a fine and undergo imprisonment on a charge of selling intoxicating liquors without a license, and he appealed to this court. The contention of the defendant, through his learned counsel, is that he was simply the steward of the Fraternal Order of Eagles, Aerie No. 328, of the city of Franklin, Pennsylvania, which was organized about March 12, 1903, as a fraternal, beneficial and social order as provided for under the constitution for subordinate aeries, and that he made no sales of intoxicating liquors but simply distributed such liquors only to the members of the order in accordance with the rules and regulations established by the order in regard thereto. That for about six years the club, or order, has rented and occupied the second- and third floors of a new brick building situate in the business portion of the city of Franklin on the corner of Thirteenth and Buffalo streets. Said floors are divided into parlors, reading rooms, lodge rooms, card rooms, bath rooms, café and buffet rooms, etc. The rooms on the see.ond floor are sometimes used for social functions and those on the third floor for lodge meetings and viee versa. On the third floor there is a large hall with anteroom, kitchen, *419 etc. All of the rooms being well equipped and furnished at an expense of $4,500 paid for out of dues and assessments. Ever since its inception the order has been conducted, as contended; as a fraternal, beneficial and social lodge, or club, strictly in compliance with the laws, constitution and rules of said order. Shortly after its organization, in compliance with the laws of the order, a café and buffet were installed, both as incidents merely to the other features of the order and equipped out of and from the moneys of the order received for dues and fees, and were conducted under the general supervision of the order. For this purpose the order appointed a room committee and a financial secretary, who had immediate supervision thereof and regularly reported to the order. There were no differences in the membership of the fraternal, beneficial and social sides of the order; all paid dues and fees and all owned all of the property of the order in common. The café and buffet, so called, provided and furnished meals, lunches, milk, buttermilk, mineral water, cigars, tobacco, beer, wine and whisky. The hours during which the rooms were kept open were from nine o’clock a. m. to two o’clock a. m. of each day. The rooms were uhder the charge of two stewards, who waited on the members, distributing to them such of the common stock on hand as they required and received in return therefor, in five cent checks, its equivalent in value, as determined by the room committee. It is contended that the only purpose was to make an equal distribution among the members of the club of the stock on hand and to secure an amount sufficient to replenish the same. It is also contended that all of the members of this club were temperate and of good character and they were such persons as are lawfully entitled to procure and use intoxicating liquors.
An examination of the testimony convinces us that the jury might have found these alleged facts in favor of the defendant and that he was not guilty of selling intoxicating liquors without a license, within the meaning of the law. But of course there were many questions of fact in *420 dispute and there were inferences to be drawn from the testimony, and these were all for the jury, under appropriate instructions from the court.
The learned counsel for appellant state the questions involved as follows: “1. Where 325 adult men of good character, in good faith, organize for fraternal, beneficial and social purposes, paying dues and fees, out of which moneys rooms are rented and furnished for their accommodation, eatables and liquors are bought and owned as tenants in common, can their steward, a member, lawfully distribute said eatables and liquors on the premises, to members only, at original cost plus cost of distribution? 2. May such members meet at such rooms daily and lawfully receive such distribution of liquors? 3. Must such organization be a substitute for the home before the liquors can lawfully be distributed? 4. Should the court submit the intent and bona fides of the organization and distribution to the jury?”
We here call attention to the conceded fact that this organization is not incorporated, but in view of the law, as we understand it, and the concessions in the arguments of the respective counsel, this is not a material question in the case.
Before proceeding to consider the assignments of error we will quote the views of this court upon this character of cases as expressed in Com. v. Smith, 2 Pa. Superior Ct. 474, by President Judge Rice:
“We agree with the court below in holding that the system of checks adopted by this association did not make the transaction essentially different from what it would have been if the members had paid-the janitor or steward directly for the liquor furnished, and he had turned over the money to the association. We agree also, that if the object of an association is merely to provide members with a convenient method of obtaining intoxicating drinks whenever they desire them and if the form of membership is no more than a pretense, so that any person without discrimination can procure liquor by signing his name in a *421 book or buying a ticket or a check, thus enabling the seller to conduct an illegal traffic under the guise of a club distribution, the fact that the organization is a chartered institution will not protect the seller: Black on Intoxicating Liquors, par. 142. This was decided in Com. v. Tierney, 148 Pa. 552, and was substantially reaffirmed, in the late case of Klein v. Livingston Club, 177 Pa. 224, where Justice Dean says: ‘If this were an unlicensed sale, under the guise of club distribution, it would clearly be unlawful; the law would look through all disguises, and so pronounce it.’ But there was evidence that this was a bona fide organization with a selected membership made up of reputable persons, really owning its property in common, and formed and carried on for purposes to which the furnishing of liquor to its members without profit was merely incidental. Of course it was for the jury to determine what the facts were; all that we are required to say, or do say, is, that there was ample evidence to warrant a jury in finding the foregoing facts. Assuming, then, that a jury might find that the transaction was a furnishing of liquors by a bona fide club to its own members without profit, each paying for the share of the common stock furnished to him, and that it was not a scheme to evade the license laws, the question arises whether it was an illegal sale. At the time the case was tried, this was an unsettled question concerning which conflicting opinions were held. Since that time it has received thorough and deliberate consideration by the Supreme Court and has been resolved against the contention that such a transaction is an illegal sale within the meaning of the Act of May 13, 1887, P. L. 108, known as the Brooks law: Klein v. Livingston Club, 177 Pa. 224. Says Justice Dean: “The purpose of the whole system is to distribute the advantages, comforts and luxuries of the club among the members so that there shall not be unequal contributions to the treasury which purchases them. They are all owners of the property, when purchased in equal shares, and if a division were then made, each one *422 would be entitled to an equal share of the liquor; but one consumes his share and that of the others who do not drink liquor, and he puts back into the common treasury the value of the other’s share; therefore, although by consumption the division is not equal, yet it is made equal by the contribution to the treasury, that has neither lost nor gained, consequently the distribution is equitable. Does this constitute a sale? We think not; there is no element of bargain, only a method of distribution of the common property.”
In Klein v. Livingston Club, 177 Pa. 224, the Supreme Court, speaking through Mr. Justice Dean, after quoting from Mr. Justice Williams in Com. v. Carey, 151 Pa. 368, quite liberally, then proceed to say: “The Brooks law only reduced to a comprehensive system all the features of all the license laws at its date on our statute books. There is not in it, nor in any of the statutes which it replaces, a prohibition of the use of liquors in clubs, any more than there is a prohibition of its use in a family. No indictment for furnishing liquors to members of a club could be sustained, unless the evidence showed beyond reasonable doubt, such. furnishing constituted a sale. The statute being penal, it must be subject to a strict construction. We cannot extend it beyond its letter. If we, in construing the Brooks statute, adopt the settled rule of construction, consider the old law, the mischief and the remedy, then we have these questions: The old law regulating and restraining the sale of liquors was disjointed or fragmentary, because it was made up of separate statutes passed at intervals of years, not seldom presenting conflicting provisions, and often provisions in conflict with special local laws; at the same time there was a settled conviction in the public mind that the license law did not produce the revenue that ought to have been exacted for the privilege of selling liquor. In view of the ineffectiveness of the old law, and the smallness of the revenue produced by it, the Brooks law was enacted; its intention was to stop what in the interests of good *423 order ought to be unlawful sales of liquor, and to exact a larger revenue from those sales made lawful by license. Probably, at the date of this act, club organizations, wherein liquor was furnished, as here, had been in existence in large towns and cities for fifty years. The legislature was not ignorant of the fact; if such use tended to disorder or bad morals, the legislature knew it; if such use was not of immoral tendency, yet was a luxury or privilege that would bear taxation and yield revenue, they knew that fact; yet there are no words in the act which, by any possible construction, can be stretched into a prohibition of the use of liquor in clubs, or that can be deemed as requiring they shall be licensed. There is, in fact, no express legislation concerning this distinctive, open, notorious, long-existing use of liquor; the plain implication is that the consumption of liquor in clubs, as known to the legislature, was not deemed a sale. The general words of the law, however, make the sale of liquor without license illegal everywhere in the commonwealth; and whether this be a sale is now a judicial and not a legislative question.”
We will now consider the assignments of error. The first assignment cannot be sustained because at the time the motion was made for a binding instruction, in favor of the defendant, the commonwealth had made a sufficient case for the jury on the questions of the bona fides of the club organization, for which the defendant claimed to be a steward, and whether or not the defendant had in fact been selling liquor or only making a lawful distribution of the same among the members of the organization as its steward or employee. When it is considered that the jury might have found that the Fraternal Order of Eagles was a lawful organization, as a fraternal, beneficial and social order, and that it was, in effect, a club organization, we are of the opinion that the learned trial judge placed too heavy a burden on the defendant by the language used as quoted in the second, third, fourth and fifth assignments and they must be sustained. In the second assignment *424 practically binding instructions were given to the jury that the organization held its meetings twice a month and that furnishing liquor to its members in the interim, every day of the week, was unlawful. We find in the record positive evidence to the effect that the organization was in session every day from nine o’clock a. m. until two o’clock the next morning, and that the meetings twice a month were executive sessions. In the third assignment we think the trial judge erred in giving a binding instruction, in effect, that the rules applicable to the organizations commonly known as clubs, would not apply to this organization. We do not think the learned judge was warranted in so instructing the jury. In the fourth assignment the trial judge gave practically a binding instruction that this lodge was not in session except twice a month. We do not think the record warrants this instruction as a matter of law. As to the fifth assignment we think the language there used was not, under the evidence, pertinent to the question of whether or not the defendant was guilty of selling liquors without a license, and the language used by the trial judge may have injured the defendant.
We are not convinced that the sixth, seventh and eighth assignments ought to be sustained. In our opinion, the language quoted in the ninth assignment subjected the defendant to a burden which he was not required to bear in the trial of the indictment against him for selling intoxicating liquors without a license, and the ninth assignment is sustained. The tenth assignment is that the court erred in the charge to the jury as a whole in failing to fairly and adequately present to that body the law applicable to the case. Then follows the charge entire. While there are some errors in the charge which have been raised by specific assignments we are not convinced that the charge as a whole is erroneous for the reason stated, and, therefore, the tenth assignment is not sustained.
The eleventh assignment is that the court erred in answering and refusing defendant’s fifth request for instruc *425 tion, the request and answer being as follows: “If the jury find from the evidence in the case that the defendant is employed, at a stated wage, by an association of men calling themselves ‘The Fraternal Order of Eagles,’ as their steward or servant; that this association is conducted for fraternal, béneficial and social purposes, and is a bona fide organization with a selected membership of reputable persons who really own their property in common, — and that this association supplies to its members liquors, without profit, and as a mere incident to the social life of the association; that this defendant while in such employment served the members, and the members only, with liquors; that the liquors served by the defendant were the property of the members of the said association, and that the defendant made no profit on the same; that,then, if the jury find these facts from the evidence, the defendant has not sold liquors, and the verdict should be ‘Not Guilty.’ Answer: The fifth point is refused.” As we view the law the learned trial judge erred in refusing this point. It ought to have been affirmed, as it could well have been, without qualification.
The twelfth assignment is not sustained. We cannot say that the trial judge erred in refusing defendant’s seventh request for instructions to the jury as raised in the thirteenth assignment. The request on the part of the defendant’s counsel was for the court to say to the jury that all persons in Pennsylvania who are over twenty-one years of age, not of known intemperate habits, ’or insane, have, under the law, the right to buy and use intoxicating liquors as a beverage, etc. This omits a class of persons who are not entitled to buy and use intoxicating liquors, to wit, persons who are visibly intoxicated at the time when the liquors are asked to be furnished to them. If the learned trial judge had unqualifiedly affirmed this point he would have, in effect, said to the jury, that a club like the one in question could serve intoxicating drinks to its members while they were visibly intoxicated. This is not the law, and as the judge could not affirm the *426 point without qualification he was justified in refusing it.
Further, to hold as requested would be to declare, in effect, that an association may be formed, the sole object of which is the furnishing of intoxicating liquors to its members, and that a steward, acting for such an association in making sales to its members, is immune from prosecution. It would be easy under such ruling to evade the license laws and to establish mere drinking places, which would be subject to no regulations. Such an institution is not a club — that is, it is not the sort of club to which the decisions heretofore cited apply, as a perusal of Justice Dean’s opinion in Klein- v. Livingston will abundantly show.
The thirteenth,-fourteenth, fifteenth, sixteenth, seventeenth and eighteenth assignments are not sustained.
The judgment is reversed with a venire facias de novo.